■ DELAWARE AND HUDSON RAILROAD CORP., Respondent, v. ADIRONDACK FARMERS CO-OPERATIVE EXCHANGE, INC., Appellant.— COOKE, J. Appeal (1) from a judgment of the Supreme Court in favor of plaintiff, entered May 23, 1969 in Albany County, upon a special verdict rendered at a Trial Term, and (2) from an order of said court, entered May 28, 1969, which denied defendant's motion to set aside the verdict. At the trial's inception, the court narrowed the triable issues to the single point of whether defendant was "negligent by reason of the use and occupancy of the leased premises" and the jury found that the accident was caused proximately by the negligence of plaintiff's injured employee and defendant. Plaintiff leased its freight house at Fort Edward in 1962 to defendant for the storage by the latter of feed and farm supplies, it

being provided by a lease provision that: "The Lessee, during the continuance of this lease, agrees to indemnify the Lessor and save it harmless from any and all claims and expenses that may arise, or may be made for damage, loss or injury resulting to the property of the Lessor, or damage, loss, injury or death to its employees, or to any other persons or their property and to pay to the Lessor, upon demand, any and all damages, claims, suits, judgments and expenses, including all expense covering investigation of claims, preparation for trial of actions or incident to settlement, adjustment or compromise of claims and suits, which the Lessor may at any time suffer or be called upon to pay by reason or in consequence of the occupancy or use of said premises by the Lessee, except that the Lessee shall not be liable for damage, loss or injury attributable to the negligent acts or omissions of the Lessor, its agents or employees, without any contributory negligence on the part of the Lessee, its agents or employees." The lessee also covenanted to keep and maintain the demised premises "in a clean and orderly condition such as will meet the requirements of the Chief Engineer of the Lessor." On November 5 or 6, 1963 a freight car containing urea, a nitrogenous compound used as a fertilizer and packaged in paper bags with plastic liners, was unloaded from a railroad siding and carried into the adjacent leased warehouse by two of defendant's employees. There was evidence that one of them noticed a sprinkling of urea on the car floor, that in being carted some of it sifted onto the freight house floor, that broken bags moved into the freight house caused further leakage, that there was no recollection of using brooms kept in the building to sweep the floors upon completion of the assigned task and that urea is a slippery substance. On November 7, 1963, still in the lease period, Parker, another employee, was directed by defendant's general manager to plaintiff's office to tell about the broken urea bags and request an inspection, leaving there for the warehouse with Connolly, plaintiff's clerk, to make the examination of the damaged shipment as requested. They walked through the freight house to the door leading to the siding. Connolly stood at the doorway and, after Parker opened the railway car door, put his hand on the car door and, in stepping across to enter the car, his foot slipped out from under him, falling and sustaining severe injuries. An available dock plate utilized as a platform between the house and car was not installed by Parker. It was raining, as it had been when they left plaintiff's office, and a "sort of scum of Urea on the floor * * * [t]o the entrance of the doorway of the unloading door" was noticed. On January 4, 1965 plaintiff was contacted by an attorney for Connolly and notification thereof was forwarded to defendant on the next day. Claim was made against plaintiff under the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51) and, after defendant was afforded an opportunity to appear, which it chose not to do, plaintiff compromised the claim for $23,000 on November 20, 1965. Unless there is a specific provision therefor in the contract of indemnity, an indemnitee is not required to give to the indemnitor notice of claims against him (*Conner* v. *Reeves*, 103 N. Y. 527, 529–530; *Whitaker* v. *Equitable Laundry Mach. Corp.*, 131 Misc. 505, affd. 223 App. Div. 881). However, if the indemnitor is given notice of the claim or proceeding against the indemnitee and declines to defend, then the indemnitor is bound by any reasonable good faith settlement the indemnitee may make (*Feuer* v. *Menkes Feuer*, 8 A D 2d 294, 299; 28 N. Y. Jur., Indemnity, § 32). Therefore, the issues should not have been narrowed to the extent of ruling that the good faith, or lack thereof, between plaintiff and Connolly regarding the settlement was not an issue, thereby foreclosing defendant from inquiring into the subject. It is the general rule that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms (*Thompson-Starrett Co.* v. *Otis Elevator*

*Co.*, 271 N. Y. 36, 41), but this does not mean, in order to warrant a construction that it was so intended, that the contract must contain express language referring to the negligence of the indemnitee (*Jordan* v. *City of New York*, 3 A D 2d 507, 509, affd. 5 N Y 2d 723). Thus, in *Kurek* v. *Port Chester Housing Auth.* (18 N Y 2d 450), contract wordage that the " Licensee agrees to hold the Authority and the State of New York harmless against all claims and demands of persons not parties to this agreement, of whatsoever kind or nature " was deemed sufficient to express an intent to indemnify the indemnitee against its own negligence. It was held that " indemnification has been permitted under contractual provisions though the language of those provisions fell short of expressly stating that its coverage extended to the active negligence of the party to be indemnified where   *   *   *   that appears to have been the unmistakable intent of the parties " (p. 456). The instant indemnification clause yields no interpretation other than that defendant agreed to indemnify against plaintiff's own negligence because of the statement as to " any and all claims   *   *   *   that may arise   *   *   *   for   *   *   *   damage, loss, injury or death to its employees, or to any other persons   *   *   *   and to pay   *.   *   *   any and all damages, claims, suits, judgments and expenses   *   *   *   which the Lessor may at any time suffer or be called upon to pay by reason   *   *   *   of the occupancy or use of said premises by the Lessee ". Even more significantly, it expressly states that defendant would be free from indemnification for plaintiff's negligence only in the event the former were free from contributory negligence. (Cf. *Farrell* v. *General Tel. Co. of Upstate N. Y.*, 29 A D 2d 51, 52–53.) The business visitor is one who comes upon the land, at the instance of the occupant, for purposes directly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the land, such a person being owed the duty of reasonable care by the occupant (*Haefeli* v. *Woodrich Eng. Co.*, 255 N. Y. 442, 448; Restatement, Torts, 2d, §§ 332, 343). Trial court's characterization of Connolly as a business invitee was correct since, without dispute, he entered upon the leased premises at the direct request of defendant and for examination of damaged goods removed from the railroad car by defendant's employee, surely a purpose at the very least indirectly related to defendant's enterprise and occupancy. Uncontradicted evidence that defendant's employees unloaded broken bags of urea with resultant spillage over the area where Connolly fell, that one of these employees did not recall sweeping the area, that it was raining on the day of the accident, that the dock plate was not put to use and that urea, when wet, is slippery supplied an ample basis for the jury's finding that defendant was partially negligent in causing Connolly's injuries (cf. *Harrington* v. *Mady's*, 279 App. Div. 828). Judgment and order reversed, on the law and the facts, without costs; motion granted and a new trial ordered, limited to the issue of the reasonable good faith of the settlement entered into between plaintiff and its employee. Herlihy, P. J., Reynolds, Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Cooke, J.