309

Renee SLADE, Plaintiff,

v.

SHEARSON, HAMMILL & CO.,
INCORPORATED, Defendant
and Third-Party Plaintiff,

v.

NATIONAL BANK OF NORTH AMERI-
CA, Third-Party Defendant.

Edward E. ODETTE, Plaintiff,

v.

SHEARSON, HAMMILL & CO.,
INCORPORATED, Defendant
and Third-Party Plaintiff,

v.

NATIONAL BANK OF NORTH AMERI-
CA, Third-Party Defendant.

Stephen E. FELDMAN, Plaintiff,

v.

SHEARSON, HAMMILL & CO.,
INCORPORATED, Defendant
and Third-Party Plaintiff,

v.

NATIONAL BANK OF NORTH AMERI-
CA, Third-Party Defendant.

COMPASS BANK AND TRUST COMPA-
NY LIMITED and Northwestern Na-
tional Bank of Minneapolis, Plaintiffs,

v.

SHEARSON, HAMMILL & CO.,
INCORPORATED, Defendant
and Third-Party Plaintiff,

v.

NATIONAL BANK OF NORTH AMERI-
CA, Third-Party Defendant.

SHEARSON HAYDEN STONE, INC., as
successor-in-interest to Shearson, Ham-
mill & Co., Incorporated, Plaintiff,

v.

S. D. LEIDESDORF & CO., a
partnership, Defendant.

Peter MYGATT, Plaintiff,

v.

S. D. LEIDESDORF & CO. and National
Bank of North America, Defendants.

Morris AMARNICK and Irving
Amarnick, Plaintiffs,

v.

NATIONAL BANK OF NORTH
AMERICA and S. D. Leidesdorf
& Co., Defendants,

v.

SHEARSON HAYDEN STONE, INC., as
successor-in-interest to Shearson, Ham-
mill & Co., Incorporated, Third-Party
Defendant.

Nos. 72 Civ. 4779, 72 Civ. 4930, 74 Civ.
1800, 73 Civ. 1461, 76 Civ. 1659, 77
Civ. 1578 and 77 Civ. 3644 (RLC).

United States District Court,
S. D. New York.

June 13, 1978.

Pomerantz, Levy, Haudek & Block by Abraham L. Pomerantz, and Richard M. Meyer, New York City, for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood by Russell H. Beatie, Jr., Raymond F. Brown, Donald L. Borod, New York City, for defendant Shearson Hammill & Co. Inc.

Olwine, Connelly, Chase, O'Donnell & Weyher by Charles M. McCaghey, Erica Baird, New York City, for third-party defendant, Nat. Bank of North America.

Proskauer, Rose, Goetz & Mendelsohn by David I. Goldblatt, New York City, for S. D. Leidesdorf & Co., a partnership.

Mordecai Rosenfeld, New York City, for plaintiff Renee Slade.

Stotsenburg & Donohue, P. C. by R. Alan Stotsenburg, New York City, for plaintiffs Edward E. Odette and Amarnicks.

Cleary, Gottlieb, Steen & Hamilton by Edwin B. Mishkin, Evan A. Davis, New York City, for Compass Bank & Trust Co.

Kleinberg, Kaplan, Wolff & Cohen, P. C. by Norris D. Wolff, New York City, for plaintiff Stephen E. Feldman.

## OPINION

ROBERT L. CARTER, District Judge.

*Status of the Proceedings*

The proposed settlement now under consideration will terminate seven pending cases arising from the collapse of the once high flying Tidal Marine International Corp. ("Tidal Marine"), a Delaware corporation, which during the period of its apparent great prosperity had major offices in New York City, London and Piraeus, Greece. Tidal Marine began in 1966 what was to become a far flung operation of chartering tankers and dry cargo vessels to various shippers. Its fleet of vessels grew from 4 in 1966 to 35 in 1971. Its common stock was registered in the United States with the Securities Exchange Commission and traded in the over-the-counter market. In 1970 and 1971 it reported dramatic growth in revenue and earnings, and its stock rose to levels of over $20 per share. This apparently rosy picture, however, was a facade. In 1972 part of its fleet was damaged and in May of that year Tidal Marine advised the financial institutions with which it did business that it had a cash flow shortage. Negotiations to remedy the problem collapsed in the summer of 1972, and, lacking sufficient financial support, the company went under.

Investigations that followed into the causes of this sudden demise uncovered

problems which exposed the defendants in these actions to liability. There were evidences of gross misrepresentations about the nature and number of the vessels Tidal Marine had under charter, inaccuracies on its books, and even indications of fraud and bribery. During the period covered by these cases, Shearson, Hammill & Co., Incorporated, whose successor in interest in now Shearson Hayden Stone, Inc., ("Shearson") was Tidal Marine's investment broker, and it had made a market for Tidal Marine stock, as well. In that connection, class plaintiffs Slade, Odette and Feldman (consolidated into 72 Civ. 4779), sued Shearson alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10(b)–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), based upon Shearson's failure to apprise plaintiffs (when soliciting the purchase of Tidal Marine stock) of the facts concerning Tidal Marine's financial and business disabilities which Shearson knew or with reasonable diligence should have known. Odette charges violations of §§ 15(c)(1), (2) and (3) of the Securities Exchange Act, 15 U.S.C. §§ 78*o*(c)(1), (2) and (3), and Rule 15c2–1, 17 C.F.R. § 240.15c2–1. These three cases were brought on behalf of all Shearson customers who, pursuant to Shearson solicitation, had bought Tidal Marine stock and suffered losses when the company collapsed.

Shearson brought the National Bank of North America ("NBNA") which, during the period in question, had been Tidal Marine's commercial banker, and had loaned large sums to Tidal Marine in connection with its fleet acquisitions, into this consolidated case as a third-party defendant. Shearson asserted that NBNA had conspired with or aided and abetted Tidal Marine in perpetrating fraud, and sought contribution or indemnity from NBNA if Shearson were held liable.

S. D. Leidesdorf & Co. ("Leidesdorf") was Tidal Marine's auditor and examined its books and records and issued financial statements purporting accurately to reflect Tidal Marine's financial condition. It is being sued in 76 Civ. 1659 by Shearson, with Shearson, as it did against NBNA, alleging that Leidesdorf aided and abetted Tidal Marine's fraudulent acts, and asserting a right to contribution or indemnity.

The cases involving Morris and Irving Amarnick (77 Civ. 3644) and Peter Mygett (77 Civ. 1578) are class actions brought on behalf of all who bought Tidal Marine stock on the open market and were not Shearson customers. It is alleged in these two cases that NBNA and Leidesdorf violated § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and aided and abetted Tidal Marine in perpetrating a fraud. NBNA is asserting therein a third-party claim against Shearson seeking contribution or indemnity and Shearson has counterclaimed.

In the seventh action, 73 Civ. 1461, Compass Bank and Trust Co., Limited ("Compass") alleges material omissions or misrepresentations by Shearson, in connection with a loan by Compass to Tidal Marine, in violation of §§ 10(b) and 15 of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78*o*, and Rules 10b–5 and 15c2–1, 17 C.F.R. §§ 240.10b–5 and 240.15c2–1, and §§ 12(2) and 17(a) of the Securities Act, 15 U.S.C. §§ 77*l*(2) and 77q(a).

The parties in 72 Civ. 4779 (the consolidated Slade, Odette and Feldman action) and in 73 Civ. 1461 (Compass) have thus far engaged in extensive, wide ranging discovery. The cases were referred to Magistrate Sol Schreiber to supervise the completion of discovery and final preparation for trial, and prior to settlement the court had determined that discovery in those cases had been completed, and that the cases were ready for trial. The parties had been engaged for some time in negotiations working towards a settlement. Under Magistrate Schreiber's supervision settlement negotiations became more intense, and indeed the *Amarnick* case was transferred here from the Eastern District in the hope of effectuating a package resolution of all seven cases.

With the guidance and able assistance of Magistrate Schreiber, a tentative agreement on settlement was reached in August, 1977, and the proposed settlement was filed with the court on November 15, 1977. An order dated November 16, 1977, was entered directing that notices be given to all members of the two designated subclasses, that the notice provide an opportunity for members of the class to opt for exclusion from the class, set a time for all members of the class to file objections to the settlement and to indicate an intention to appear on February 23, 1978, at the settlement hearing, the purpose of which would be to determine whether the proposed settlement is fair and reasonable and should be approved by the court.

The proposed settlement provides for the payment of $1,000,000 to the subclass solicited by Shearson and of $725,000 to open market purchasers of Tidal Marine stock, including expenses and attorney fees, with the net amount being distributed among members of the class. Plaintiff Compass is to receive $750,000 in settlement of its law suit. While the Compass agreement does not require court approval, the settlement has been presented as an integrated whole. Court approval of the class settlement will mean that all seven suits are settled, while court disapproval of the class settlement will unhinge the entire package. Shearson, NBNA and Leidesdorf are each contributing to the class settlement fund of $1,725,000 and $750,000 to Compass in the private action.

On approval of the proposed settlement, final judgment dismissing all claims with prejudice is to be entered against all class members, except those who have timely exercised their option for exclusion, and class claimants are thereafter to be barred from asserting claims related to, connected with, or arising out of any transactions which gave rise to this litigation.

The prompt filing of a proof of claim is a requisite to a claim on the settlement fund. Class members submitting verifiable claims are to be entitled to a proportionate share of the proceeds. Class claims are to be allowed in an amount equal to the gross purchase price for each share of Tidal Marine stock obtained during the class period less the net proceeds of any such shares sold at a loss and any compensation received in connection with the settlement of any other action relating to the subject matter of the settled claim. If the gross purchase price is less than the proceeds of the sale of that share, there can be no claim against the settlement fund.

As of the writing of this opinion 374 verifiable claims have been filed by the Shearson subclass showing a loss of $1,338,999.74, and 386 verifiable claims have been filed by the open market purchasers subclass showing a loss of $2,446,892.24 for a total class asserted loss of $3,785,891.98. Fifteen defective claims had also been filed. These claimants have been informed that their claims are defective and of the requirements to perfect them but thus far none have done so. The defective claims assert a total loss of $51,504.59 with $32,953.53 of the loss falling in the Shearson subclass, and $18,551.06 falling in the open market purchasers subclass.

*Determination*

Settlements by the parties are preferred and encouraged to prevent wasteful litigation and to allow accommodations best suited to the parties' interests. *See, e. g., Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) (*Grinnell I*). In a class action the court has the obligation to evaluate the terms proposed to determine whether they are so unfair taken as a whole as to preclude judicial approval, *Glicken v. Bradford,* 35 F.R.D. 144 (S.D.N.Y.1964), and it must be satisfied that the settlement fully protects the interests of absent class members. *Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972); *Zerkle v. Cleveland-Cliffs Iron Co.,* 52 F.R.D. 151 (S.D.N.Y. 1971). The court, however, is not to mistake the settlement hearing for "a trial or a rehearsal of the trial." *Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972) *quoting,*

Haudek, The Settlement and Dismissal of Stockholders' Actions—Part II: The Settlement, 23 Sw.L.J. 765, 795 (1969). The basic factors which must be taken into account in determining whether a proposed settlement warrants court approval are the complexity, expense and likely duration of the litigation if it proceeds to trial; the reaction of the class to the proposals; the solidity of the class case and whether the law suit has proceeded to a point where the parties are able to evaluate accurately their strengths and weaknesses; the risks of proving liability and damages; the adequacy and reasonableness of the settlement fund; whether defendant could withstand a greater judgment; and the risks of maintaining the class action through trial. *See, e. g., City of Detroit v. Grinnell Corp. (Grinnell I), supra.*

In the cases involving the Shearson solicitations, discovery had been concluded. The novel issue raised in these cases is whether an institution or firm operating as both investment banker and securities broker is precluded from soliciting customers for its client's securities on the basis of public information which (because of inside information learned in its investment banking capacity) it knows to be false. The court's answer to that question was in the affirmative and the opinion is reported at CCH Fed.Sec.L.Rep. ¶ 94,329 (1974). The issue was one of first impression, and its resolution was the subject of wide ranging comment in law reviews and other publications. *See, e.g.,* Lipton and Mazur, *The Chinese Wall Solution To the Conflict Problems of Securities Firms,* 50 N.Y.U.L.Rev. 459 (1975); Huck, *The Fatal Lure of the "Impermeable Chinese Wall,"* 94 Banking L.J. 100 (1977). Because of the importance to brokerage firms and investment houses of an early final authoritative resolution of the question, the court granted Shearson's request to certify the case for appeal. CCH Fed.Sec.L.Rep. ¶ 94,439 (1974). The Court of Appeals accepted the appeal, but after oral argument remanded the case on the grounds that certification had been improvidently granted. 517 F.2d 398 (2d Cir. 1974).

However, the Court of Appeals opinion did make clear that any final resolution of the so-called "Chinese Wall" question would depend largely on the development of the evidentiary facts at trial—when Shearson gained knowledge of Tidal Marine's financial plight, and how impenetrable the "Chinese Wall" was between Shearson's investment banking and sales departments are among the myriad evidentiary factors which would bear upon the outcome of that issue. Also, there would be the necessity of showing willfulness on Shearson's part in respect of the § 10b claim. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). While the standard of proof for the § 12 violation is considerably lower, and class plaintiffs' task in that respect is less onerous, it is clear that the success of the Shearson subclass case at trial was not a foregone conclusion.

NBNA's liability is even more questionable since it made no affirmative representations to investors. Also, it loaned some $20 million to Tidal Marine. In *United States Steel and Carnegie Pension Fund, Inc. v. Orenstein,* CCH Fed.Sec.L.Rep., ¶ 95,680 (S.D.N.Y.1976), this court held that a bank's extension of credit to a corporation, coupled with a statement that the account was satisfactory, could not be equated to affirmative investment advice. While, here, there is the possibility of showing that the bank's employees may have received bribes from Tidal Marine and that some of them may have failed to scrutinize with care the validity of Tidal Marine's security offered in connection with the bank's loan, the establishment of liability to the plaintiff class, however, would be difficult, particularly since NBNA could contend at trial that as a principal it cannot be held chargeable with acts of its faithless employees who committed fraud on the bank in direct conflict with the bank's interest. *See* Restatement (Second) of Agency § 282. The class would have to show that the bank, in the exercise of due care, would have or should have detected the fraud, but proof that detection would have readily come through customary procedures would be difficult. Proof of scienter in re the § 10(b) claim here, as with

the claim against Shearson, will pose another hurdle. *See Ernst & Ernst v. Hochfelder, supra.*

As to Leidesdorf's liability, the scienter principles of *Ernst & Ernst, supra,* again present problems of proof. A reckless disregard of consequences must be established, success of which is not assured despite the fact that Tidal Marine's former chairman has pleaded guilty to a criminal charge in connection with overstating Tidal Marine's income for 1971.

Moreover, any trial would be a lengthy one. The trial on the issue of liability was certain to take at least three to four weeks, and if liability were to be established, the trial on damages could be expected to take even longer.

The formula for recovery seems fair and reasonable and the settlement fund also seems a reasonable amount. Compass Bank's loss was estimated to be $2 million. The total claims presented by the Shearson subclass amounted to $1,338,999.74 in proved losses. There are additional claims in the Shearson subclass which have not been perfected but assuming they will be, $32,953.53 in proved additional losses can be added, bringing the total of proved losses to a gross of $1,371,953.27. The settlement fund for the Shearson class is $1,000,000. That clearly compares favorably with the private action settlement of $750,000 against a claimed loss of $2,000,000.

The open market purchasers' subclass has established proved losses totaling $2,446,-892.24. In addition, there are defective claims in this category totaling some $18,-551.06. Thus, if the defective claims are perfected, the total proved losses of the open market purchasers subclass will amount to $2,465,443.30. The gross settlement fund for this subclass is $725,000. Again, measuring this settlement against that in the Compass case, the $725,000 settlement fund compares favorably with the private settlement, considering the attenuated nature of the open market purchasers' claims and the extremely difficult questions of proof which this subclass would have to surmount to establish liability and prove entitlement to damages at a trial.

Discovery has been very extensive. Some 15 individuals were deposed, some for as long as 4 days, and approximately 200 exhibits were introduced in connection with those depositions. A large number of interrogatories were served, answered or objected to. Moreover, there have been a number of court conferences, motions and arguments so that the issues had become crystallized at the time settlement was reached.

No objections were filed to the settlement and no member of the class has requested to be excluded or opted out.

Plaintiff class counsel have submitted a joint fee application for payment of $450,-000 in fees plus disbursements of $9,519.02. The fee seems entirely reasonable and consonant with the applicable standards in class action settlements. This is said despite the fact that, as will be shown, the court cannot measure the quality of effort put forth by class counsel in the *Amarnick* case. Yet, since the court readily justifies an award of $375,000 to class counsel without reference to *Amarnick* counsel the lack of familiarity with the latter is no barrier to approval of the projected total award.

Little need be said about the Pomerantz firm. It is a highly respected law firm in matters concerning the federal securities law. That firm, along with Mordecai Rosenfeld, was appointed general counsel for the litigation for the consolidated class action. During the course of the litigation Richard Meyer and Mordecai Rosenfeld were more frequently before the court than other counsel, but at various critical hearings or conferences Mr. Pomerantz was present and at all times sought to alleviate rather than add to the court's burdens.

Mr. Rosenfeld, once an associate with the Pomerantz firm, began his own practice in 1960 and has been counsel in *Rosenfeld v. Black,* 445 F.2d 1337 (2d Cir. 1971), *cert. dismissed,* 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972), *Eisen v. Carlisle and Jacquelin,* 52 F.R.D. 253 (S.D.N.Y.1971), *rev'd,* 479 F.2d 1005 (2d Cir. 1973), *vacated and remanded,* 417 U.S. 156, 94 S.Ct. 2140, 40

L.Ed.2d 732 (1974), and in other similar actions. Alan Stotsenburg edited the first volume of Securities Law Review (1969), was lead counsel in *In re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491 (S.D.N.Y.1976), and he or his firm has been lead or co-counsel in various other class actions raising difficult and complex issues. The four mentioned lawyers have appeared before the court on many occasions during the approximately six years that this litigation has been an active case on the court's calendar. The court can personally attest to the considerable effort expended and to the high quality of professional skill manifested in the prosecution of this litigation by the above-named counsel.

As indicated, Kleinberg, Kaplan, Wolff & Cohen, P.C. are unknown to the court.[1] The *Amarnick* litigation was prosecuted in the Eastern District commencing in 1976 and was transferred to this district, apparently over class counsel's vehement objections, so that the settlement which is now under consideration could be consummated. While the open market purchasers subclass raises more difficult issues of proof than the Shearson subclass claims, unlike Shearson, it breaks no new grounds. Conceptually, the task of class counsel was considerably easier.

The parties have detailed some 2,949.87 hours of lawyers' time devoted to this litigation. The hourly rate sought is $200 for Mr. Pomerantz, $175 for Mr. Haudek, $125 for Mr. Meyers and $100 for Mr. Krasner. The greatest time spent on these cases is Mr. Meyers' 786.37 hours. Mr. Rosenfeld spent some 568 hours on these cases, and his hourly rate is $140, and Mr. Stotsenburg spent 252 hours and his hourly rate is $110. The charges seem reasonable enough, frankly, even modest. Moreover, the Pomerantz-Rosenfeld-Stotsenburg effort was efficiently spread, with the greatest time spent being done by counsel with lower hourly rates (1,612.37 hours), with only a bit more than 300 (307.5) hours being spent by

Pomerantz and Haudek who command the higher hourly rates. That is the way a well run firm would handle a non-contingent fee client, if it wanted to keep him happy. Some of the time has been reconstructed since the case commenced before *Grinnell I* indicated that the time charges should be the basis for court award of attorneys fees in class actions. This litigation is some 6 years old. During much of that period the court itself was involved in hearings, arguments and conferences with counsel. There were at least two appeals in the consolidated cases, extended discovery, as indicated, and time spent with Magistrate Schreiber's help in reaching the present proposed disposition. The total time being charged seems fair, and should all be charged to the settlement fund since it all encompasses time of benefit to the class.

The Kleinberg firm has no gradation of rates among its partners—all charges are at the rate of $100 per hour. The 1,030 hours the firm has logged as time spent on the cases and the hourly rate sought seem reasonable enough by New York standards. Class counsel in *Amarnick* devoted considerable time to motions, appeals, hearings, conferences and discovery. Although none of this was before this court except for concluding conferences with Magistrate Schreiber after that case was transferred here, the indicated activity is a part of the record.

The lodestar figure of $333,017.25 is certainly reasonable based on time spent on a case and the reasonable hourly rates charged. I have considered the contingency, the private attorney general concept, and quality of services rendered factors. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977) (*Grinnell II*); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976); *Liebman v. J. W. Petersen Coal & Oil Co.*, 63 F.R.D. 684, 701 (N.D.Ill. 1974). In my judgment, an award to Pomerantz, Rosenfeld and Stotsenburg of $375,-

---

**1.** This does not mean that the firm or its members have not practiced in the Southern District or have not appeared before my colleagues on the bench. I personally have never had any

members of the firm appear before me, except at the conclusion of this litigation after the proposed settlement had been reached.

000 would not be considered out of line based on the lodestar figure of $152,621.25 to the Pomerantz firm and $79,520.00 to Rosenfeld for a total of $232,141.25. I have evaluated the contingency, private attorney general and quality of services rendered factors at 30% of the lodestar amount allowed. I would allow Pomerantz and Rosenfeld an additional 20% as general counsel so that their lodestar figure of $232,141.25 should be increased by 50%. Mr. Stotsenburg's lodestar figure is $27,720.00, which would be increased by 30% for the contingency, private attorney general and quality of services rendered factors. Thus, Shearson's subclass counsel could readily warrant fees of $375,000. That leaves only $75,000 to account for, and the lodestar figure for the Kleinberg firm is $100,876.00.

I do not know how counsel plan to divide the approximately $117,000 increment over the joint lodestar figure. Nor am I suggesting a division. Since I cannot fairly appraise the work of the Kleinberg firm, and perhaps with some injustice do not regard their case as having the degree of conceptual and theoretical difficulty as did the consolidated cases, the best way to evaluate the reasonableness of the overall fee application was to determine what amount might be considered reasonable evaluating only the work of counsel whose performance and effort the court could accurately and honestly assess. Based on that yardstick, the applied for fees seem to be reasonable and fair.

Moreover, the total fee requested ($450,-000) is roughly 26% of the settlement fund of $1,725,000. Of the proposed fee, $260,000 is to come out of the Shearson subclass fund of $1,000,000 and $190,000 is to be assessed against the $725,000 open market purchasers settlement fund. This seems to me to be a fair allocation based on the time factor, effort and the complexity and novelty of the issues involved, and it seems to fall well within guidelines and standards set forth in *City of Detroit v. Grinnell (Grinnell I* and *Grinnell II), supra.*

■ Accordingly, the settlement, the proposed award to class counsel of $450,000 in fees and $4,352.12, $1,652.70, $805.70 and $2,708.50 in expenses for the Pomerantz, Rosenfeld, Stotsenburg, and Kleinberg firms respectively are approved.

IT IS SO ORDERED.