**HS EQUITIES, INC., Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Third-Party Plaintiff,**

v.

**Joseph DECKER, Third-Party Defendant.**

**No. 77 Civ. 3507 (CMM).**

United States District Court, S. D. New York.

June 23, 1980.

Wien, Lane & Malkin, New York City, for plaintiff; Robert G. Desmond, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant; Thomas R. Pattison, New York City, of counsel.

Alfred C. Purello, Albany, N. Y., for third-party defendant.

METZNER, District Judge:

Plaintiff HS Equities, Inc. (HS), indemnitee on a brokers' blanket bond (fidelity clause) issued by defendant Hartford Accident & Indemnity Company (Hartford), seeks to recover from the defendant a loss it suffered allegedly due to the misconduct of its employee, Joseph Decker (Decker), the third party defendant.

This is a diversity case and the court has jurisdiction of the subject matter and the parties.

HS is the surviving corporate entity of Hayden, Stone, Inc., a stock brokerage firm. It is engaged in liquidating the firm's business after a sale of its assets. Decker was a registered representative employed by Hayden, Stone, Inc. in its Albany office from June 1966 to September 10, 1970. Mr. and Mrs. Draicchio were his clients from early 1967 to sometime in the early part of 1970.

In the fall of 1970 Mr. and Mrs. Draicchio instituted separate actions in the Western District of New York against HS and Decker, in which the complaints alleged that the plaintiff had been damaged by the defendants' misconduct in the handling of their accounts. On August 11, 1971, HS gave notice to Hartford of the pendency of the lawsuits and forwarded copies of the complaints to Hartford. Although nine months had elapsed since the filing of the complaints, nothing had transpired that could have prejudiced Hartford's position in the litigation. Nonetheless, Hartford declined to undertake the defense of the actions.

The litigation proceeded slowly until June 25, 1975, when HS notified Hartford that the cases had been consolidated for trial to be held on July 15, 1975, and that HS had refused a demand by the Draicchios for $155,000 to settle the litigation. HS invited Hartford to participate in settlement negotiations which it expected would be renewed, and also asked if Hartford had any objections to HS settling the cases. Hartford replied that, since it had elected not to defend the suit, it would neither approve nor disapprove the settlement, that any settlement by HS would not prejudice its right to make claim under the bond, but that this did not constitute a waiver by Hartford of any defenses it had under the bond.

The trial commenced as scheduled. After a week of trial devoted to Mr. Draicchio's testimony on direct, and only a couple of hours of testimony on cross-examination, the case went over to the following Monday, July 21, 1975. At the time of adjournment the court suggested that counsel further consider settlement. On Monday morning such discussions took place, and HS agreed to pay $130,000 in settlement of all claims.

·Counsel for HS also represented Decker. When Decker was served, he called HS inquiring what he should do, since he was innocent of any wrongdoing. HS told him that its counsel would represent him because their investigation at the time indicated that Decker had done no wrong, and that they would stand or fall together on what the jury determined on the trial. HS paid all the legal fees and did not request any contribution from Decker. Understandably, Decker made no objection.

Decker, who lived in Albany, had to travel to Buffalo for deposition and the trial, and his expenses were paid by HS.

Trial counsel was aware of the possibility of a conflict of interest in representing both HS and Decker. However, after speaking with the people at HS, reviewing the investigation that had been made by HS of the claims, and after speaking to Decker, counsel determined that no conflict existed. Counsel testified that nothing occurred through the time of the consummation of the settlement to change this view.

At the time of the settlement, Decker was present and voiced satisfaction with the way the matter was handled. Counsel advised him that he could go home. HS paid the $130,000 and never sought contribution from Decker. However, at no time was Decker ever told that as a result of the settlement he was open to a claim by the indemnitor, Hartford, if it was called upon to pay HS under the bond.

HS now seeks to recover the $130,000 under the bond issued by Hartford, claiming that the loss was due solely to Decker's misconduct. Hartford, in turn, claims over as subrogee against Decker.

The jumping off point for deciding this case is the opinion by the Court of Appeals in *HS Equities, Inc. v. Hartford Accident & Indemnity Company*, 609 F.2d 669 (2d Cir. 1979) (*Michael*). The parties there were the same as in the instant case, except that the registered representative and third-party defendant was a person named Michael. Hartford in both cases refused to assume the defense of the action. In addition, it is clear in this case that Hartford refused to enter the settlement negotiations. In both cases settlements were effected; in *Michael* before trial; here, during trial. In both cases Hartford formally denied liability after the settlements. In both cases Annucci, HS's insurance broker, testified on behalf of HS as to his conversations with Duffy of Hartford in early 1970 wherein Duffy stated that the bond did not cover the claims in these cases. It was only on the appeal in *Michael* that Hartford dropped those contentions. 609 F.2d at 672.

In *Michael* the Court of Appeals said that one of the consequences attaching to Hartford's denial of liability is that the settlement by HS created presumptive evidence that Michael had committed acts of misconduct. I would hold on the facts of this case that refusal to defend and refusal to participate in the settlement negotiations alone trigger the presumptions discussed in *Michael* and referred to below.

Another consequence "is that the burden was placed on Hartford to successfully contest matters which otherwise are presumed to have been established in the litigation against HS." 609 F.2d at 674. Once HS had advanced the fact of its settlement, "Hartford was obliged to show either bad faith, fraud, or factual or legal error [in the settlement] to rebut this presumptive evidence." 609 F.2d at 675.

While ordinarily the finding of presumptive evidence may shift the burden of going forward, the wording "successfully contest matters," and "obliged to show" indicate that the defendant also has the burden of proof as to Decker's innocence.

In *Michael* the court said that despite Hartford's refusals it should not "be precluded from denying its liability under the Bond in this case if Michael were innocent of the charges brought against him. Moreover, we do not wish to be understood as holding that Michael's innocence, or lack of it, is irrelevant to the issue of whether

Hartford was liable under the Bond to HS." * 609 F.2d at 674.

These views of the Court of Appeals are predicated on that court's determination that the New York law on the effect of the settlement in the underlying lawsuit is found in *Conner v. Reeves,* 103 N.Y. 527, 532, 9 N.E. 439, 442 (1886). There the court said in dealing with an analogous issue that "we think the reasonable rule is that a judgment so obtained [*i. e.,* by consent of the parties to the action rather than by a decision on the merits] is presumptive evidence only against the sureties, and that they are at liberty to show that it was not founded upon any legal liability to the plaintiff in the action, or exceed such liability."

We are concerned here with a diversity case involving an indemnity contract covered by New York law. Rule 302 of the Federal Rules of Evidence provides that the effect of a presumption is determined in accordance with state law.

It is interesting to note that four years after the *Conner* decision, the very same court in *Steinbock v. Evans, et al.,* 122 N.Y. 551, 25 N.E. 929 (1890), stated that the *Conner* case held "that in the absence of evidence of collusion on the part of the sheriff that a judgment by his consent was as binding upon the sureties in the undertaking as though it had been recovered in a contest." 122 N.Y. at 556, 25 N.E. at 930. This statement of what *Conner* said is clearly wrong. Was the court attempting to limit *Conner* because of the unfair result flowing from such a rule, as will be discussed below?

Sixty years later the Appellate Division, First Department, in an opinion by Judge Breitel (later Chief Judge of the New York Court of Appeals) stated that:

"If, however, the indemnitor declines to defend the proceeding, and the indemni-

tee is therefore required to carry that burden, then the indemnitor is conclusively bound by any reasonable good faith settlement the indemnitee may make or any litigated judgment that may be rendered against him." *Feuer v. Menkes Feuer, Inc.,* 8 A.D.2d 294, 299, 187 N.Y. S.2d 116, 121 (1959).

Similar holdings are found in the Third Department: *Delaware & Hudson R.R. v. Adirondack Farmers Cooperative Exchange,* 33 A.D.2d 962, 306 N.Y.S.2d 1002 (3d Dept. 1970); *Baker v. Northeastern Industrial Park, Inc.,* 73 A.D.2d 753, 423 N.Y. S.2d 308 (3d Dept. 1979). In the latter case the court said, 423 N.Y.S.2d at 311:

"The object of giving notice to the indemnitor is to enable the indemnitee to avail itself of its right to impose the burden of defense upon the party deemed ultimately liable and to estop the indemnitor by the judgment recovered or the settlement reached, from again contesting the facts upon which the judgment or settlement depends. [Citations omitted.]"

In view of the length of time that elapsed between *Conner* in 1886, and *Feuer* and *Baker* in 1959 and 1979, respectively, I think it is fair to state that if the Court of Appeals of the State of New York were to again review the question, it would adopt the *Feuer* doctrine.

If the *Conner* rule were to prevail, the indemnitor need never come in to defend an action since it knows that it will have an opportunity to contest the issue of innocence in a subsequent lawsuit. This being so, the indemnitee will never settle the original lawsuit because the law is clear that only a judgment after trial against the indemnitee after notice to the indemnitor is binding on the indemnitor.

Thus, contrary to the philosophy of the law that disputes should be settled,** the

---

\* Hartford was unsuccessful in *Michael* because it never offered any proof on the trial as to Michael's innocence.

\*\* *See, e. g., Williams v. First National Bank of Pauls Valley,* 216 U.S. 582, 595, 30 S.Ct. 441,

445, 54 L.Ed. 625 (1910); *Weight Watchers of Philadelphia v. Weight Watchers International,* 455 F.2d 770, 773 (2d Cir. 1970); *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills,* 211 F.2d 785, 788 (10th Cir.), *cert. denied,* 348 U.S. 832, 75

application of the *Conner* rule encourages litigation.

Furthermore, under the *Conner* rule, litigation by the indemnitee predicated on a judgment entered on a settlement requires the court to conduct a trial within a trial in order to reach a final determination. This is vividly portrayed in this case where Hartford contends that based on Decker's testimony of innocence (heard here under oath for the first time), it has met its burden under the presumptive evidence rule. At this point Hartford argues that plaintiff must now produce all the evidence that the Draicchios would have presented in their trial, including the four days of trial that had already gone forward, in order to have the issue of innocence resolved.

■ The court has not found any case dealing with this fact situation. It is my considered judgment that the modern rule puts the burden and costs where they belong. There is only one trial, and the indemnitor makes its choice of contesting the charge of misconduct in the original trial or reimbursing the indemnitee for the amount it paid in settlement.

We must now consider the question of good faith. In this area the testimony of trial counsel is extremely important. Both gentlemen were impartial and unbiased. Mr. Cordes is a lawyer of wide experience. Mr. Blumberg, now a partner in the Cordes firm, was only an associate back in 1975. The preparation of the case for trial was painstaking, and it was clear that trial counsel was aware of all the ramifications of the litigation and its attendant risks. The indicia that are usually weighed by trial counsel in determining whether to settle a case were carefully weighed by counsel before recommending the settlement of $130,000. In fact, Hartford's counsel never questioned their good faith and once or twice even eschewed any suggestion that he was doing so. There is absolutely no basis for attacking the good faith of the settlement, let alone showing bad faith.

Turning now to an analysis of the settlement. It is clear that the settlement embraced not only issues going to Decker's misconduct, but also issues going solely to HS's misconduct. Plaintiff would have the court look at the complaint in the *Draicchio* case which on its face charges both defendants with all the misconduct. However, a reading of that complaint shows that it alleged everything but the kitchen sink, a practice which, in securities cases, is unfortunately not limited to the Western District of New York. A better understanding is found in the analysis by trial counsel of what they were facing at the time of trial after depositions and discovery had refined the issues.

■ In trial counsel's view, $65,000 represented the bedrock liability of all alleged Regulation T violations. Such liability, of course, was solely that of HS. The other issues in the case involved Decker, and consequently the sum of $65,000 should be deducted from the $130,000 sought by HS, and judgment should be entered for the plaintiff in the sum of $65,000.

We now turn to the third-party complaint in which Hartford seeks recovery of the $65,000 from Decker on the equitable doctrine of subrogation. This appears somewhat incongruous after witnessing the collaboration between counsel for Hartford and Decker during the trial, after seeing Hartford call Decker as its witness and urge his complete innocence of any charge of misconduct, and after reading Hartford's brief, which contains absolutely nothing concerning this claim over.

■ A subrogee stands in the shoes of its subrogor. *See, e. g., United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947); *Aaacon Auto Transport v. State Farm Mutual Automobile Insurance Co.*, 537 F.2d 648, 652 (2d Cir. 1976); *Hartford Accident and Indemnity Co. v. First National Bank & Trust Co. of Tulsa, Okl.*, 287 F.2d 69, 72 (10th Cir.

S.Ct. 55, 99 L.Ed. 656, 54 L.Ed. 625 (1954); *Slade v. Shearson, Hammill & Co., Inc.*, 79

F.R.D. 309 (S.D.N.Y.1978); *Stull v. Baker*, 410 F.Supp. 1326, 1332 (S.D.N.Y.1976).

1961). The subrogee's action is derivative and is subject to whatever defenses the third party has against the subrogor. *Great American Insurance Co. v. United States,* 575 F.2d 1031, 1034 (2d Cir. 1978); *Hartford Accident and Indemnity Co. v. First National Bank & Trust Co. of Tulsa, Okl., supra* at 72; *Williams v. Globe Indemnity Co.,* 507 F.2d 837, 839 (8th Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 101 (1975); *Tursair Executive Aircraft Services, Inc. v. United States,* 383 F.2d 381 (5th Cir. 1967).

 I find that, under the circumstances of this case, Decker would have a valid defense against a claim by HS to recover any part of the loss allegedly due to his misconduct. Accordingly, Hartford's third-party claim as subrogee must fail.

Decker is a defendant in this action because of a conflict of interest that arose because the same counsel represented both HS and Decker. One result of this dual representation was that when it was time to discuss settlement, Decker was not consulted as an involved client should be. This is understandable from a practical standpoint, since Decker was getting a "free ride" and would not be called upon to contribute to the settlement.

However, HS's generosity in defending its employee cannot excuse its failure properly to protect Decker's interests. Decker's nominal approval of the settlement was clearly not an informed decision made in his own best interest.

He was never told that HS would seek reimbursement from Hartford on the fidelity clause of its bond based on a claim that Decker was guilty of misconduct. He was never told that in such situation he might be open to liability to Hartford under the latter's right of subrogation. If this had been explained to him he would never have consented to the settlement since he stoutly maintained his innocence. Certainly no independent lawyer knowing of these possibilities would have permitted such a settlement to be approved without obtaining a release from HS. And no release was ever given to Decker.

Hartford's claim or defense would be that HS's activities interfered with Hartford's rights as subrogee, and therefore relieved Hartford of any obligation to HS under its bond. *See Michael, supra* at 672.

However, since the refusal to defend has the same effect as a formal denial of liability, this claim is not available to Hartford in this case. *Cf. Bunge Corp. v. London and Overseas Insurance Co.,* 394 F.2d 496 (2d Cir. 1968). Furthermore, I cannot find any argument by Hartford suggesting prejudice in this specific area.

The third-party claim is dismissed.

This opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

So ordered.