893 F.2d 21
 Wallace N. ROBERTS, Alfred L. Terrille, and Costa A.
Michalakis, Plaintiffs-Appellees,
v.
CONSOLIDATED RAIL CORPORATION, Defendant and Third-Party
Plaintiff-Appellee,
Kurt and Susan Nusbaum, individually and d/b/a Nusbaum
Excavating Co. and/or Nusbaum Contracting Co., and
Hamilton Industrial Corporation,
Third-Party Defendants,
Kurt and Susan Nusbaum, individually and d/b/a Nusbaum
Excavating Co. and/or Nusbaum Contracting Co.,
Third-Party Defendants-Appellees,
Hamilton Industrial Corporation, Third-Party Defendant-Appellant.
 No. 176, Docket 89-7296.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1989.
Decided Dec. 26, 1989.
 
 Robert M. Cohen, Ballston Lake, N.Y., for third-party defendant-appellant, Hamilton Indus. Corp.
 Scott H. Barbour, McNamee, Lochner, Titus & Williams, P.C., Albany, N.Y., for third-party plaintiff-appellee, Consol. Rail Corp.
 Richard C. Roxin (Michael J. Smith, Roemer and Featherstonhaugh, P.C., Albany, N.Y., of counsel), for third-party defendants-appellees, Kurt and Susan Nusbaum.
 Collins, Collins & DiNardo, Buffalo, N.Y., for appellee, Wallace N. Roberts.
 McClung, Peters & Simon, Albany, N.Y., for appellee, Alfred L. Terrille.
 Graham, Campaign & McCarthy, New York City, for appellee, Costa A. Michalakis.
 Before OAKES, Chief Judge, and MINER and MAHONEY, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 Hamilton Industrial Corporation ("Hamilton") appeals judgments of the United States District Court for the Northern District of New York, Lee P. Gagliardi, Judge, ordering Hamilton to indemnify the Consolidated Rail Corporation ("Conrail") for all sums paid by Conrail to its employees as a result of a collision between a Conrail train and a road grader operated by an independent contractor performing work at Hamilton's plant, and adjudging Hamilton 10% liable to Conrail's employees for the accident, pursuant to a jury verdict. We affirm the judgments below.
 
 FACTS
 
 2
 On December 13, 1984, a Conrail train collided with a road grader operated by Kurt Nusbaum near Castleton, New York, at a private railroad crossing which provided the exclusive means of access to Hamilton's plant. Nusbaum was an independent contractor on his way to perform construction work at the plant when his road grader stalled on the railroad tracks. Three of Conrail's employees suffered injuries from the collision and filed separate suits in January 1985 against Conrail under the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq. (1982). In each action, Conrail filed third-party claims against Nusbaum and Hamilton, alleging that their negligence proximately caused the injuries. The injured employees thereafter added claims against Nusbaum and Hamilton in their complaints, and the three suits were consolidated for trial. The jury returned verdicts totaling $3,050,000 in favor of the three plaintiffs, and apportioned liability in the amount of 50% to Conrail, 40% to Nusbaum, and 10% to Hamilton.
 
 
 3
 After trial, Conrail moved for an order requiring Hamilton to indemnify Conrail for all damages, costs, and sums paid by Conrail as a result of the accident.[1] Conrail based its claim for indemnification on an agreement executed in 1945 by Hamilton's and Conrail's predecessors which allowed Hamilton's predecessor ("the plant owner") to use an existing driveway leading from the main road to its plant via the crossing of the railroad tracks at grade. According to that agreement, the plant owner paid to Conrail's predecessor ("the Railroad") an annual fee of $10 for use of the crossing and agreed to "indemnify and save harmless" the Railroad "of and from all damages and claims for damages, demands, suits, recoveries, judgments or executions" made, brought, or recovered on account of injury or damage to the Railroad's "agents, servants or passengers" resulting from the plant owner's use of the crossing. In a 1981 letter, Hamilton and Conrail declared themselves the successors to the parties who executed the 1945 agreement, assumed the obligations of their predecessors memorialized in that agreement, and increased to $200 the annual rental fee for use of the crossing.
 
 
 4
 The district court granted Conrail's post-trial motion for indemnification based on the 1945 agreement. Hamilton appeals this holding, arguing that the district court wrongfully looked to the parties' obligations under the 1945 agreement rather than under a revised crossing agreement executed in 1986. In the alternative, Hamilton claims that indemnifying Conrail for Conrail's own partial negligence was not within the terms of the 1945 agreement, and that any agreement for indemnification in this case is void for public policy reasons. Hamilton furthermore appeals its 10% share of liability for the accident apportioned by the jury.
 
 DISCUSSION
 1. Indemnification
 A. Governing Agreement
 
 5
 Hamilton alleges that the district court erred in applying the terms of the 1945 agreement. Acknowledging that the parties in 1981 assumed the obligations of their predecessors with respect to that agreement, Hamilton nevertheless claims that the district court should have looked to the provisions of the revised crossing agreement executed on October 13, 1986, by Hamilton, the Village of Castleton-on-Hudson ("Village"), and Conrail subsequent to initiation of this action but nearly two years before trial.[2]
 
 
 6
 In the 1986 agreement, Hamilton and the Village (collectively "the Licensee") agreed to indemnify the Railroad for any losses and claims made in connection with their use of the crossing, including claims for damages to the Railroad's "employees, patrons, or licensees, ... whether attributable in whole or in part to the fault, failure or negligence of the Railroad, or otherwise." The new agreement was not to become effective until the Licensee either purchased public liability insurance and contractual liability insurance in limits of not less than $3 million, which were to cover all liabilities assumed by the Licensee pursuant to the agreement, or else paid Conrail an additional $1,000 a year so as to enable Conrail to purchase such insurance. The agreement provided that should the Licensee exercise the latter option, its "obligation to indemnify the Railroad from damages resulting from or arising out of the Railroad's fault, failure or negligence shall be obviated and set aside up to an amount of Three Million Dollars." Having chosen to pay the additional fee to Conrail rather than purchasing the insurance itself, Hamilton argues on appeal that its duty to indemnify Conrail, if any, for the prior accident must be set aside up to an amount of $3 million.
 
 
 7
 By its terms, the 1986 agreement superseded and cancelled the 1945 agreement as extended by the 1981 letter "except as to any payments, obligations or liabilities already accrued and due by the Licensee to the Railroad thereunder." The determination of which agreement governs the 1984 accident, therefore, hinges upon whether we construe the obligations or liabilities for the 1984 accident as having accrued prior to the effective date of the 1986 agreement.
 
 
 8
 Absent an ambiguity in a written contract, courts will not look to the underlying intent of the parties in executing the contract. See American Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 765 (2d Cir.1984) (applying New York law). A provision is ambiguous where a natural and reasonable reading of its language allows for two or more possible meanings. See Kemelhor v. Penthouse Int'l, Ltd., 689 F.Supp. 205, 212 (S.D.N.Y.1988), aff'd, 873 F.2d 1435 (2d Cir.1989). In such cases, courts look to the acts and circumstances surrounding execution of the ambiguous term to ascertain the parties' intent. See Bray Terminals, Inc. v. Grand Union Co., 74 A.D.2d 965, 966, 425 N.Y.S.2d 886, 888 (3d Dep't 1980).
 
 
 9
 Here, we hold that the relevant clause of the 1986 agreement is reasonably susceptible to at least two different readings. We can construe the clause as stating that the 1986 agreement does not apply to accidents that had already occurred and from which "obligations or liabilities" had accrued, or that the 1986 agreement excepts from coverage only past adjudications of liability against Conrail. Under the former reading, the 1986 agreement would not govern this case, since the accident in 1984 had already occurred and "obligations" to indemnify had thereby accrued; under the latter reading, the 1986 agreement would apply, since there was no adjudication of liability for which indemnification was due until December 1988, and since the conventional wisdom is that a cause of action for indemnity does not arise until at least judgment is rendered against the indemnitee, if not until actual payment of the judgment. See Bay Ridge Air Rights, Inc. v. State, 44 N.Y.2d 49, 54-56, 404 N.Y.S.2d 73, 75-76, 375 N.E.2d 29, 31-32 (1978).
 
 
 10
 To choose between the possible interpretations, we must look to the intent of the parties, as evidenced by the circumstances surrounding execution of the contract. Here, in reducing Hamilton's obligation to indemnify Conrail by $3 million, the parties clearly did so for purposes of offsetting the insurance monies that would be received under any policy purchased by Conrail pursuant to the 1986 agreement. Since such insurance money would not be available for accidents that occurred prior to purchase of the policy, we are convinced that the parties intended the 1986 agreement to track insurance practice and thus to apply only to future accidents and occurrences, and not also to future adjudications of liability for past events. It is hardly conceivable that the parties would bargain for payment by Hamilton of $1,000 a year in exchange for a reduction of its obligation to indemnify Conrail by $3 million, absent receipt by Conrail of insurance monies in the amount of $3 million. The circumstances surrounding execution of the 1986 agreement thus strongly suggest that the parties intended the 1945, and not the 1986, agreement to define their respective obligations in this case. Accordingly, we find the 1945 agreement applicable.
 
 B. Application of 1945 Agreement
 
 11
 Hamilton contends that even if the 1945 agreement defines the parties' obligations in this case, the agreement should not be construed, absent specific and express language, as granting Conrail the right to indemnification against its own active negligence. We agree with the district court that the language in the 1945 agreement, although not specifically applying to instances of Conrail's negligence, is sufficiently unequivocal to grant Conrail the right to indemnification in this case.
 
 
 12
 Contrary to Hamilton's argument, New York courts have held that an indemnification clause may be construed to require indemnification of active negligence even when those words do not appear in the contract. See, e.g., Kurek v. Port Chester Hous. Auth., 18 N.Y.2d 450, 456-57, 276 N.Y.S.2d 612, 615-16, 223 N.E.2d 25, 28 (1966) (contract stating that indemnitor will hold indemnitee harmless "against all claims and demands ... of whatsoever kind or nature" deemed sufficient to express intent to indemnify against indemnitee's own negligence); Delaware and Hudson R.R. Corp. v. Adirondack Farmers Co-Op. Exch., Inc., 33 A.D.2d 962, 964, 306 N.Y.S.2d 1002, 1005 (3d Dep't 1970) (clause stating that lessee will indemnify lessor as to "any and all claims" construed to include claims arising out of lessor's own negligence).
 
 
 13
 The indemnity provision at issue here, under which the Licensee is to indemnify the Railroad for "all damages and claims for damages, demands, suits, recoveries, judgments or executions" made on account of injuries or damage to the Railroad's agents, servants, or passengers, suggests a broad scope similar to those clauses held by New York courts to apply to instances of the indemnitee's own negligence. Moreover, as the district court found, the entire import of the agreement at issue in this case recognizes the extra burden and safety hazard placed upon the Railroad by the crossing agreement and the nominal benefit enjoyed by the Railroad in return. As in Salamy v. New York Central System, 1 A.D.2d 27, 146 N.Y.S.2d 814 (3d Dep't 1955), in which the court construed a contract as entitling a railroad to indemnification against its own negligence,
 
 
 14
 [t]he tenor of the agreement as a whole, the purposes, benefits, needs and risks of the parties thereto, all point to the conclusion that the parties intended, contemplated and understood that the railroad was to expose itself to no additional risks, even due to negligence of its employees, by reason of granting a private right to cross its tracks for a nominal consideration.
 
 
 15
 1 A.D.2d at 30, 146 N.Y.S.2d at 817. We therefore hold that the district court's construction of the indemnification clause as applying to active negligence on the part of Conrail was not erroneous.
 
 
 16
 Hamilton moreover argues that notwithstanding the provision of the crossing agreement, indemnifying a party for its own negligence is void on public policy grounds. However, New York courts previously have not declined to enforce contracts in which one party indemnifies the other for its own negligence. See Jordan v. City of New York, 3 A.D.2d 507, 509, 162 N.Y.S.2d 145, 147 (1st Dep't 1957), aff'd, 5 N.Y.2d 723, 177 N.Y.S.2d 709, 152 N.E.2d 667 (1958); 23 N.Y. Jur.2d Contribution, Indemnity, and Subrogation Sec. 53 (1982). Additionally, Hamilton's argument that common carriers in particular cannot contract to be indemnified for their own negligence is unsupported by any relevant New York statutory or case law.[3] Hamilton's attempts to escape its obligations under the contract are therefore without merit.
 
 2. Hamilton's Share of Liability
 
 17
 Hamilton furthermore appeals the district court's refusal to grant judgment notwithstanding the jury's verdict or to order a new trial on the issue of Hamilton's share of liability for the accident. It has long been the rule, however, that a trial court order granting or denying a motion for a new trial on grounds that a verdict is against the weight of the evidence is not reviewable on appeal. See Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481-83, 53 S.Ct. 252, 254-55, 77 L.Ed. 439 (1933); Portman v. American Home Prods. Corp., 201 F.2d 847, 848 (2d Cir.1953). Although a district court's refusal to grant judgment notwithstanding a verdict is reviewable, see 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2540 at 614 (1971), we hold that sufficient facts support the jury's verdict in this case, such as Hamilton's failure to inform Nusbaum of safety precautions or the train schedule, and its failure to place a watchman at the crossing during construction work at the plant. We therefore uphold Hamilton's 10% share of liability for the accident.
 
 
 18
 Judgments affirmed.
 
 
 
 [1]
 Conrail originally initiated a claim for contractual indemnification in its third-party complaint against Hamilton. By stipulation of the parties, however, the indemnification issue was reserved for post-trial consideration by the bench
 
 
 [2]
 According to Conrail, the 1986 agreement was executed so that the Village, which had not been party to the 1945 crossing agreement, could use the crossing to gain access to its newly-constructed sewage plant adjacent to Hamilton's property. See Brief of Defendant and Third-Party Plaintiff-Appellee at 27
 
 
 [3]
 Hamilton cites one case from another jurisdiction, Pennsylvania R.R. Co. v. Kent, 136 Ind.App. 551, 198 N.E.2d 615, transfer denied, 246 Ind. 101, 202 N.E.2d 893 (1964), for its argument that a special rule applies to common carriers. Yet in denying a petition to transfer that case, the Indiana Supreme Court stated that "[t]he opinion of the Appellate Court [in Kent ] should be construed as denying the right of a common carrier to make indemnifying contracts against its own torts or negligence in its common carrying services only with those using such services." Pennsylvania R.R. Co. v. Kent, 246 Ind. at 102, 202 N.E.2d at 893-94 (emphasis added). Because Conrail did not contract to be indemnified either by its own passengers or in connection with injuries to its passengers, Hamilton's argument that common carriers cannot be indemnified for their own negligence is unsupported by Kent. Hamilton's argument is further undermined by the holding in Salamy, supra, that a provision obligating a licensee to indemnify a railroad for the railroad's own negligence is valid