■ GEORGE P. BAKER et al., as Trustees of the Property of PENN CENTRAL TRANSPORTATION COMPANY, Respondents, v NORTHEASTERN INDUSTRIAL PARK, INC., Appellant.—Appeal from a judgment of the Supreme Court in favor of plaintiffs, entered June 20, 1978 in Albany County, upon a directed verdict rendered at a Trial Term, on plaintiffs' motion pursuant to CPLR 4401 at the close of plaintiffs' proof. This action was commenced by plaintiffs to obtain indemnity from defendant, pursuant to the terms of a certain railroad sidetrack agreement, for the amount paid to Willis H. Van Allen, one of plaintiffs' employees, pursuant to a claim under the Federal Employers' Liability Act for injuries sustained by Mr. Van Allen on December 4, 1972. At the trial of the action before a jury, Willis H. Van Allen testified that he had been an employee of Penn Central since 1941, holding the position of conductor for about 10 years. On December 4, 1972, he had reported to work at the Selkirk yards at about 2:30 P.M. and was assigned to deliver certain freight cars to various buildings in the Northeastern Industrial Park in Guilderland owned by defendant. The train crew, in addition to Van Allen as the conductor, consisted of a brakeman, an engineer and a fireman. The train, consisting of an engine, a caboose and 10 freight cars, arrived at the Industrial Park at about 6:00 P.M., at which time it was snowing. Earlier it had been raining and freezing. Mr. Van Allen stepped off the train when it stopped at Building No. 11 in the Industrial Park and took about five or six steps in the four- to six-foot-wide area between the building platform and the freight cars when he "stepped into this hole with ice, covered by snow" and fell upon his right leg, fracturing his right ankle. It was his recollection that the snow in this area was six to eight inches deep. After the accident, he was taken to the Albany Medical Center where he was X-rayed and his right leg was placed in a cast. His leg remained in the cast for about six weeks, and thereafter he used crutches for about a month and a half. He returned to work on April 14, 1973. Defendant was immediately advised by letter of the accident and that it was a matter to be handled by defendant pursuant to the terms of the agreement between plaintiffs and defendant. On February 27, 1973, defendant's insurance carrier determined that there was no liability on the part of defendant, and declined to pay the claim made by Willis Van Allen. On February 28, 1973, plaintiffs advised defendant that they had no alternative but to proceed pursuant to the provisions of the Federal Employers' Liability Act, and would look to defendant for reimbursement of any moneys paid to the claimant employee, pursuant to the terms of the sidetrack agreement. On August 7, 1973, plaintiffs again advised defendant that it would look to defendant to indemnify and hold it harmless for any and all expense and liability it may be put to, including any judgment which may be rendered or any amount paid to Willis Van Allen in compromise settlement of his claim then pending against plaintiffs. Defendant was also advised that on August 21, 1973 settlement negotiations would be conducted and defendant was invited to attend and protect its interests. On September 23, 1973, Willis Van Allen settled his claim under the Federal Employers' Liability Act against plaintiffs for the sum of $10,750 and delivered a general release. On or about May 6, 1974, this action seeking indemnity, pursuant to the terms

of the sidetrack agreement, was commenced. Defendant answered on or about May 23, 1974 and the case was reached for trial on or about April 25, 1978. At the close of plaintiffs' case, plaintiffs moved for a directed verdict. Defendant contends that the trial court committed reversible error by granting the motion for a directed verdict at the close of plaintiffs' proof in view of the fact that defendant had not submitted any proof, and that the motion had no foundation as to either liability or damages. It is also contended that defendant is entitled to a directed verdict based upon plaintiffs' failure to establish a basis for contractual indemnity; the failure of plaintiffs to establish negligence or notice with respect to the defective condition allegedly causing the injuries, and/or the failure of plaintiffs to submit any competent medical proof as to the claimed injuries. The sidetrack agreement between plaintiffs and defendant, dated February 1, 1972, provided, insofar as it is pertinent, as follows: "1. The Industry shall provide, without cost to the Railroad, all necessary right-of-way outside of the right-of-way of the Railroad, required for the proper construction and operation of said sidetrack, said right-of-way to be satisfactory to the Railroad. [3.] Said sidetrack shall be maintained (including removal of ice, snow, weeds and debris) and renewed to the satisfaction of the Railroad. [5.] The Railroad shall have the right to use the whole or any part of said sidetrack [8. (b)] (iv) Notwithstanding anything contained in this section 8(b), and irrespective of any joint or occurring negligence of the Railroad, the Industry assumes sole responsibility for and agrees to indemnity, save harmless and defend the Railroad from and against all claims, actions or legal proceedings arising, in whole or in part, from (a) the failure of the Industry to comply with requirements set forth in Sections 3 and 7 hereof, or (b) any claims, actions or legal proceedings under the Federal Employers' Liability Act and any amendments to said Act now or hereafter in effect, alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition if the unsafe place to work or the condition resulted in whole or in part from any act or omission of the Industry, its agents, employees, tenants, licensees or invitees." As the court explained in *Delaware & Hudson R. R. Corp. v Adirondack Farmers Co-op. Exch.* (33 AD2d 962, 963): "Unless there is a specific provision therefor in the contract of indemnity, an indemnitee is not required to give to the indemnitor notice of claims against him *(Connor v. Reeves,* 103 N. Y. 527, 529-530; *Whitaker v. Equitable Laundry Mach. Corp.,* 131 Misc. 505, affd. 223 App. Div. 881). However, if the indemnitor is given notice of the claim or proceeding against the indemnitee and declines to defend, then the indemnitor is bound by any reasonable good faith settlement the indemnitee may make *(Feuer v. Menkes Feuer,* 8 A D 2d 294, 299; 28 N. Y. Jur., Indemnity, § 32)." The object of giving notice to the indemnitor is to enable the indemnitee to avail itself of its right to impose the burden of defense upon the party deemed ultimately liable and to estop the indemnitor by the judgment recovered or the settlement reached, from again contesting the facts upon which the judgment or settlement depends *(Village of Port Jervis v First Nat. Bank of Port Jervis,* 96 NY 550; *Feuer v Menkes Feuer, supra).* Defendant's contentions that plaintiffs failed to establish negligence, or notice of the defective condition, or to submit medical proof of the claimed injuries are, therefore, without merit. On the facts, two issues were preserved for the trial in this action: 1. Was the defendant required by the sidetrack agreement to remove the snow from the area between the sidetrack and the platform? 2. Was the settlement reasonable in amount? Defendant contends that its contractual duty extended only to the removal

of snow and ice from the track itself. Plaintiffs assert that the agreement requires the removal of snow and ice from the track and the area adjacent to the track. Considering the terms of this agreement, and, in particular paragraph 1 above set forth, it is clear that the word "sidetrack" includes not only the track itself, but also the entire right of way provided by defendant to plaintiffs which was required for the proper construction and "operation" of the sidetrack. While the agreement does not detail what the operation of a sidetrack requires, it is common knowledge that the operation of a sidetrack requires the switching, moving, hooking and unhooking of freight cars for the purpose of placing them adjacent to warehouse platforms, and those operations require a brakeman and a conductor to step off the train into the area adjacent to the track for the purpose of throwing the switches, unhooking and signaling. This is substantiated by the testimony of Mr. Van Allen. These activities were obviously contemplated by the parties when they entered into the sidetrack agreement, and, such activities being necessary for the operation of the sidetrack, defendant cannot reasonably contend that the word "sidetrack" was limited to the trackage only. Under this agreement, the word "sidetrack" means the right of way required for the track and operation thereof. The meaning and intent of the parties is clear from the agreement, the word is, for all intent and purposes of the agreement, synonymous with the right of way provided by defendant. Any interpretation limiting the word "sidetrack" to the track itself would lead to an absurd result and must be rejected. Defendant was, therefore, obligated under the agreement to remove ice and snow from the area where Mr. Van Allen fell and was injured, and, under section 8 (subd [b], par [iv]) of the agreement, defendant agreed to indemnify plaintiff from any claims arising from its failure to remove ice and snow. CPLR 4401 provides: "Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of evidence presented by an opposing party with respect to such cause of action or issue, or at any time on the basis of admissions." Here, plaintiff moved for judgment at the close of its own case based in part upon the testimony of Robert A. Ballentine, a vice-president of defendant corporation, upon his examination before trial that there was never any snow removal done adjacent to the tracks between the track and the platform, that said removal was not necessary. Upon this testimony, the court directed the verdict for plaintiff before defendant had an opportunity to present its evidence either in explanation or contradiction. Paragraph 3 of the agreement provides that the sidetrack was to be maintained and renewed to the satisfaction of the railroad. Thus, the testimony that snow was never removed from the area in question in that it was not necessary might be explained by testimony on the part of defendant that the railroad never required removal of snow from this area, and was satisfied with removal of snow only around the switches (*Horn v Ketchum,* 30 AD2d 624). Further, the direction of a verdict required a determination that the amount paid by plaintiff was reasonable. This was an issue on which defendant made no admission. In the absence of an admission, the reasonableness of the amount paid remained an issue of fact for the jury to determine upon all of the evidence. While the amount paid based upon plaintiffs' evidence would appear reasonable, it was not proper to preclude defendant from offering whatever evidence it might have in contradiction. The judgment appealed from should, therefore, be reversed and a new trial ordered. Judgment reversed, on the law and the facts, without costs and a new trial ordered. Sweeney, J. P., Kane, Staley, Jr., Main and Herlihy, JJ., concur.