INTERNATIONAL MINERALS & CHEMICAL CORP., et al., Respondent/Cross–Appellant,

v.

AVON PRODUCTS, INC.,
Appellant/Cross–Respondent.

No. 63076.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 14, 1994.

Application to Transfer Denied
Jan. 24, 1995.

Michael Joseph Morris, W. Stanley Walch, William G. Guerri, Linda Carroll Reisner, St. Louis, for appellant.

Frank N. Gundlach, Thomas Cummings, Jordan Bernard Cherrick, Petree Eastman, Thomas Blumeyer Weaver, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

The plaintiffs, International Minerals & Chemical Corporation (IMC) and Mallinckrodt, Inc. (Mallinckrodt), and the defendant, Avon Products, Inc. (Avon), appeal from the judgment of the trial court. After partial summary judgment, this action was previously appealed in *International Minerals v. Avon Products (Avon I)*, 817 S.W.2d 903 (Mo. banc 1991). Although the facts recited

in *Avon I* are on substantially the same record, we again set forth the basic facts here for the sake of clarity.

On February 28, 1986, Avon sold all of the stock of its wholly owned subsidiary, Mallinckrodt, to IMC. As part of the Purchase Agreement between Avon and IMC, Avon agreed to indemnify IMC against Mallinckrodt's existing contingent liabilities.[1] Several of these existing liabilities were listed in Avon's Disclosure Schedule. One of these was a claim by E.I. DuPont de Nemours & Company (DuPont) against Mallinckrodt.

Mallinckrodt marketed and sold products using a radioactive chemical known as PYP. DuPont filed suit in the United States District Court for the District of Ohio, charging patent infringement for these sales. This suit was pending at the time IMC purchased the stock of Mallinckrodt from Avon. In fact, the parties were only awaiting the decision of the district court since the action had already been argued and submitted. On January 30, 1987, the district court rendered its decision. The court sustained the DuPont patents but found that some of Mallinckrodt's major PYP products did not infringe on DuPont patents. Furthermore, the court determined that Mallinckrodt had not acted in bad faith or willfully infringed on any of DuPont's patents. The district court's ruling was limited to liability only and did not address the amount of damages.

DuPont appealed to the United States Court of Appeals. Under the terms of the Avon–IMC purchase agreement, Avon, as the indemnitor, had the right to assume the defense of the patent case on appeal. It chose not to do so. Mallinckrodt, now under the auspices of IMC, controlled the appeal. The appellate court reversed the district court. The appellate court held that the products, which the district court had ruled were noninfringing, did, in fact, violate DuPont patents. This ruling increased DuPont's potential recoverable damages considerably. Even more damaging to Mallinckrodt, the court held that Mallinckrodt willfully infringed one DuPont patent. This led to the potential for DuPont to recover treble damages and attorney fees. Moreover, Mallinckrodt faced an injunction against future PYP sales.

With an injunction looming and since the appellate court's ruling did not address the issue of damages, Mallinckrodt entered settlement negotiations with DuPont. In accordance with the Purchase Agreement between Avon and IMC, Mallinckrodt needed Avon's consent to settle the DuPont claim since Avon would ultimately have to indemnify the plaintiffs for this claim. When negotiations were finally completed, DuPont agreed to a settlement of $32 million and a twenty-five percent royalty on future PYP sales. Avon consented to the settlement in order to enable Mallinckrodt to continue future sales, but reserved the issue of allocation of the amount paid among Avon, Mallinckrodt and IMC.

In accordance with the Avon–IMC Purchase Agreement, IMC and Mallinckrodt sought indemnity from Avon for the DuPont settlement and eventually filed suit in the Circuit Court of the City of St. Louis. The trial court entered a partial summary judgment finding that Avon was liable under the indemnity provision but leaving damages for later determination. Avon appealed from this judgment. In *Avon I*, 817 S.W.2d at 910 (Mo. banc 1991), the Missouri Supreme Court affirmed the trial court's grant of partial summary judgment and remanded the case for further proceedings on damages.

After remand to the trial court, all parties moved for summary judgment on damages. Ruling on these motions, the trial court found Avon was not responsible for any liability Mallinckrodt incurred after the closing date on which IMC bought Mallinckrodt. In all other respects the court overruled these motions, leaving the issue of damages for a jury's consideration. The trial court also considered the plaintiffs' motion to strike certain defenses Avon was prepared to offer. The trial court ruled Avon could not present any evidence that the DuPont settlement amount was unreasonable; the court also

---

**1.** The parties agreed that the contract would be construed and governed by the laws of the State of New York.

precluded any evidence that Mallinckrodt mishandled the patent case defense.

After all the evidence was presented in a trial on damages, the jury returned a verdict for the plaintiffs in the amount of $16 million. Plaintiffs then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted plaintiffs' motion for a judgment notwithstanding the verdict, increasing the plaintiffs' award to $27,059,273.[2] Alternatively, in accordance with Rule 72.01(c), the trial court granted the plaintiffs' motion for new trial, if the j.n.o.v. was reversed, because the court found it had erred in submitting Avon's proffered mitigation of damages instruction.

Avon appealed from the trial court's judgment, and the plaintiffs filed a cross-appeal. For reasons of convenience, we first turn our attention to plaintiffs' appeal.

### PLAINTIFFS' APPEAL

### I

■ On February 28, 1986, Avon closed its sale of Mallinckrodt to IMC. The effective date of the patent case settlement was December 31, 1987. Between February 28, 1986, and December 31, 1987, Mallinckrodt continued to market and sell products using PYP, infringing on DuPont's patent. The patent case settlement compensated DuPont for the damages it suffered as a result of all infringing sales—including sales which occurred between the closing date and the date of final settlement. The settlement also included a twenty-five percent royalty for all future PYP related sales. In their first point on appeal, IMC and Mallinckrodt argue that Avon must indemnify them for all of these losses. Avon maintains it should indemnify the plaintiffs only for losses arising from pre-closing patent right infringements and all post-closing infringements are the responsibility of the plaintiffs alone.

Ruling on the parties' cross-motions for summary judgment, the trial court found that Avon was not liable under the indemnity clause for damages arising from Mallinck-

rodt's acts of infringement occurring after the Avon–IMC closing date. The plaintiffs argue that the trial court's ruling was erroneous because it conflicts with the plain language of the Purchase Agreement and the intent of the parties. The pertinent part of the Purchase Agreement reads:

> Avon agrees to indemnify [plaintiffs] and hold [plaintiffs] harmless from all out-of-pocket losses, costs, expenses (including reasonable attorneys' fees and expenses) and liabilities incurred by [plaintiffs] as a result of ... any contingent liability of Mallinckrodt or New Mallinckrodt, whether or not set forth in the Avon Disclosure Schedule, *to the extent (but only to the extent) based on or arising out of events, acts, omissions, conditions or a state of facts occurring or existing on or prior to the Closing Date* ... (emphasis added)

The plaintiffs argue that the entire DuPont claim against Mallinckrodt arose out of facts already present at the time of closing. In fact, DuPont's claim had already been tried by the time IMC bought Mallinckrodt. The plaintiffs maintain that the only change in conditions after the closing took place was the decision of the Court of Appeals for the Federal Circuit. The plaintiffs claim, therefore, the terms of the indemnity agreement cover all of the patent case losses.

■ Words in a contract are to be construed to achieve the apparent purpose of the parties. *Hooper Associates v. AGS Computers*, 74 N.Y.2d 487, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903, 904 (1989). Although the words might seem to indicate a broader meaning, they should be restrained to the particular occasion and to the particular object which the parties intended. *Hooper*, 549 N.Y.S.2d at 367, 548 N.E.2d at 904. This is especially true with indemnity contracts. The language of an indemnity contract should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties. *Tokyo Tanker Co. v. Etra Shipping Corp.*, 142 A.D.2d 377, 536 N.Y.S.2d 75, 77–8 (1989). It should not be extended to include damages

---

**2.** Because the court did not premise the new award on Avon's acceptance of the additional award or an alternative order for new trial, the action of the court can not be considered an additur.

which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract. *Tokyo Tanker,* 536 N.Y.S.2d at 78.

In the present action, the language of the indemnity agreement is unambiguous. Avon would indemnify the plaintiffs for any contingent liability arising out of "acts, omissions, conditions or a state of facts occurring or existing on or prior to the Closing Date." The plaintiffs would have us treat the patent case, pending at the time of closing, as a singular unit from which all liability arose. And as such, the patent case could be considered to be a state of facts existing prior to the closing date. This argument ignores the nature of DuPont's injuries, the source of Mallinckrodt's liability. DuPont's injuries were not indivisible. Prior to closing, Mallinckrodt marketed and sold products using PYP, infringing on the DuPont patent. Avon must indemnify the plaintiffs for all liability arising out of these sales. If, at this point, Mallinckrodt ceased all activity which violated DuPont's patent, then the patent case could be treated as a singular liability for which Avon bore all responsibility. Instead, Mallinckrodt sold products using PYP after closing. Mallinckrodt's liability to DuPont for these sales does not arise out of "acts, omissions, conditions or a state of facts occurring or existing on or prior to the Closing Date." The source of this liability is Mallinckrodt's post-closing conduct. The indemnification agreement does not contain any language encompassing liability arising out of Mallinckrodt's post-closing conduct.

Plaintiffs argue it is reasonable to infer that the parties intended for post-closing liabilities to be subject to Avon's indemnity. The plaintiffs claim that reading the contract as a whole reveals Avon's intent to convey Mallinckrodt free and clear of any liabilities. The plaintiffs cite the warranty provisions of the agreement as evidence of this intent. The warranty provision of the agreement did represent that Mallinckrodt owned or had the right to use all patents material to Mallinckrodt's business. However, all claims listed in Avon's disclosure schedule, including the DuPont claim, were excepted from this warranty. This is not evidence of an intent to convey Mallinckrodt to IMC free and clear of all liabilities; it indicates an intent to allocate the risk of existing potential liabilities to Avon and the risk of future potential liabilities to the plaintiffs.

It is not reasonable to infer that post-closing damages were to be covered by the indemnity agreement. Under the plaintiffs' reading of this agreement, after the closing date, Mallinckrodt could intentionally infringe upon DuPont's patent with complete impunity. It could simply look to Avon for indemnity. Mallinckrodt would control the extent of patent infringements, and the plaintiffs would reap all the profits of this conduct. Avon, on the other hand, would bear the burden of compensating DuPont for Mallinckrodt's illegal behavior. Certainly, the parties never intended this. To achieve the result plaintiffs desire, we would have to ignore the clear limitation included in the indemnity clause. This limitation evidenced an unmistakable intent that Avon would only indemnify the plaintiffs for liabilities arising out of acts occurring prior to the time of closing. Obviously, post-closing sales of PYP did not occur prior to closing. The trial court gave proper effect to the parties' agreement. Point denied.

## II

For their second point on appeal, IMC and Mallinckrodt argue that, at the least, the language of the contract is ambiguous as to whether post-closing patent infringements were covered by the indemnity clause. Therefore, they argue, the trial court erred by failing to submit this issue to the jury and by refusing to allow the plaintiffs to introduce extrinsic evidence to determine the parties' intent.

 Determination of the intent of the parties to a contract can be made as a matter of law where that intent is discernible from the four corners of an unambiguously worded agreement. *Pouch Terminal v. Hapag-Lloyd (America),* 172 A.D.2d 735, 569 N.Y.S.2d 122, 123 (1991). Where the language of a contract is susceptible of varying but reasonable interpretations, the parties may submit extrinsic evidence as an aid in

construction, and the resolution of the ambiguity is for the trier of fact. *Id.*

■ Here, the language of the contract was unambiguous. A contract for indemnity encompasses only those losses the parties intended. *Tokyo Tanker*, 536 N.Y.S.2d at 77–78. The contract did not cover liability arising from post-closing acts. The trial court did not err in failing to submit this issue to the jury and by refusing to allow the plaintiffs to introduce extrinsic evidence to determine the parties' intent.

### III

■ Plaintiffs allege that DuPont, as part of its initial settlement offer, would have agreed to a twenty percent royalty rate for future PYP sales. Because Avon refused to consent to this initial settlement offer, DuPont increased its demand to a royalty rate of twenty-five percent. As a result, the final DuPont settlement included a twenty-five percent royalty rate. IMC and Mallinckrodt argue that Avon is liable for the five percent increase because Avon unreasonably withheld its consent to DuPont's initial settlement offer. For their third point, the plaintiffs argue that the trial court erred by failing to submit this claim to the jury.

■ A trial court does not err by failing to instruct the jury on a claim which is beyond the scope of the pleadings. *See Fisher v. McIlroy,* 739 S.W.2d 577, 580 (Mo.App.1987). Nowhere in plaintiffs' first amended petition is it alleged that Avon is liable for unreasonably withholding its consent to DuPont's initial settlement offer. The petition does not even recite facts pertaining to the initial settlement negotiations. Instead, plaintiffs initial pleadings allege that Avon is responsible under the terms of the indemnity provision for all DuPont royalties, not just a five percent increase.

Ruling on the parties' cross-motions for summary judgment, the trial court found that Avon was not responsible for future royalty payments under the indemnity agreement. After this ruling, the plaintiffs moved to amend their petition just three days prior to trial. The amended petition would have premised Avon's liability for the increased royalty rate on Avon's breach of Section 8.5 of the Purchase Agreement. Section 8.5 provided that the indemnifying party could not unreasonably withhold its consent to a settlement. This theory of liability is completely inconsistent with plaintiffs' first amended petition. The trial court denied plaintiffs' motion to amend their first amended petition.

■ The nature of our pleading rules is to liberally permit amendments when justice requires, but a party does not have an absolute right to amend its petition. *Downey v. Mitchell,* 835 S.W.2d 554, 556 (Mo.App.1992). The trial court has broad discretion in granting or denying leave to amend, and its decision will not be overturned absent a clear and palpable abuse of this discretion. *Id.* Here, three days before the trial of a case which had been pending for several years, the plaintiffs tried to amend their petition to introduce a basis for liability which had never been included in the initial pleadings. The trial court properly denied this motion. *See Fogarty v. J.C. Penney Co., Inc.,* 736 S.W.2d 443, 447 (Mo.App.1987). Therefore, this theory of liability—that Avon's breach of Section 8.5 resulted in a five percent increase in the royalty rate plaintiffs paid to DuPont—was outside the scope of the pleadings. The court did not err in refusing to submit this claim to the jury. Point denied.

### AVON'S APPEAL

### I

■ We turn now to Avon's appeal. For its first point on appeal, Avon attacks the trial court's judgment notwithstanding the verdict. Avon argues the trial court's judgment countermands the Missouri Supreme Court's ruling in *Avon I,* ignores the substantial and competent evidence which supported the jury's award, and fails to take into account the plaintiffs' burden of proof. We agree that the judgment notwithstanding the verdict must be reversed.

■ In reviewing a trial court's grant of judgment notwithstanding the verdict, we only consider the evidence and reasonable inferences supporting the verdict and disregard evidence to the contrary. *Sanders Co. Plumbing v. City of Independence,* 694

S.W.2d 841, 844–45 (Mo.App.1985). A judgment notwithstanding the verdict is proper only if upon such a view of the evidence, reasonable minds could not differ as to the verdict. *Scott v. Car City Motor Co., Inc.,* 847 S.W.2d 861, 864 (Mo.App.1992).

We first turn to Avon's argument that the ruling of *Avon I* precluded a j.n.o.v. Avon maintains that, as to the amount of damages, the Supreme Court identified disputed issues of material fact which had to be settled by the fact finder upon remand and which could not be decided as a matter of law. But clearly, the only issue before the Supreme Court in *Avon I* was Avon's liability. *Avon I,* 817 S.W.2d at 908. In fact, the court was reticent to discuss the legal and factual issues which might arise in subsequent proceedings. *Avon I,* at 910. Because the court made no ruling as to the amount of damages, the holding of *Avon I* did not preclude a j.n.o.v. on this issue.

 On the other hand, the Supreme Court did dispose of the issue of liability in *Avon I.* The court ruled that under the parties' contract, Avon was liable to IMC and Mallinckrodt for indemnity. Upon remand, the only issue left to be determined was the amount of damages. However, this issue remained a question for the jury to decide. Where damages are unliquidated, the amount of damages to be awarded is a jury question and is not an appropriate issue for a j.n.o.v. *Krame v. Waller,* 849 S.W.2d 236, 239 (Mo.App.1993). A claim is said to be liquidated where the amount of damage is readily ascertainable by computation or can be determined by reference to a recognized standard. *Wulfing v. Kansas City Southern Ind.,* 842 S.W.2d 133, 160 (Mo.App.1992). That is not the case here because of the nature of IMC and Mallinckrodt's evidentiary burden.

 Under New York law, when an indemnitor has notice of the underlying action against the indemnitee and declines to defend that action, the indemnitor is *conclusively bound by any reasonable good faith settlement* the indemnitee may make. *Feuer v. Menkes Feuer, Inc.,* 8 A.D.2d 294, 187 N.Y.S.2d 116, 121 (1959). However, in its action against the indemnitor, the indemnitee has the burden of establishing that the settlement was reasonable and made in good faith. *Horn Const. Co. v. MT Sec. Service Corp.,* 111 A.D.2d 220, 489 N.Y.S.2d 254, 255 (1985). Furthermore, as set out above in plaintiffs' appeal, the settlement amount in the present action embraced damages DuPont suffered from patent right infringements both before and after closing. Since Avon is only responsible for liability incurred prior to closing, the plaintiffs had to establish, not only that the settlement was reasonable, but also what portion of the settlement was attributable to pre-closing patent infringements.

Our research of New York law did not reveal any authority in which an adequate definition or a meaningful standard was assigned to the phrase "reasonable good faith settlement," but we find persuasive guidance in *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279, 282 (8th Cir.1982). The court stated:

> A party seeking indemnity after settling a claim upon notice to the indemnitor must show that its settlement was reasonable and made in good faith. The fact finder generally must evaluate the reasonableness of the settlement by comparing the nature of the injury and the damages incurred to the size of the settlement. The fact finder should also review the good faith of the settlor by evaluating the probability that it would have been held liable [in the underlying action].[3] *Id.*

IMC and Mallinckrodt therefore must prove that the settlement amount was *reasonably related* to the damages DuPont suffered from pre-closing patent right infringement. *Id.* at 283. If the fact finder determines the amount paid was not reasonable, then it

---

**3.** Mallinckrodt's liability to DuPont is not in question. Prior to the patent case settlement, the only issue between DuPont and Mallinckrodt which had not been fully litigated was the amount of damages DuPont could recover. The United States Court of Appeals for the Federal Circuit had already determined that Mallinckrodt was liable to DuPont for patent right infringement. Avon is estopped from contesting the facts upon which that judgment rests since it had an opportunity to defend the patent claim. *See Baker v. Northeastern Indus. Park, Inc.,* 73 A.D.2d 753, 423 N.Y.S.2d 308, 311 (Div.1979).

should determine what amount would be reasonably related to DuPont's pre-closing injuries. This latter amount represents IMC and Mallinckrodt's loss for purposes of indemnification. *Id.* at 283.

In *Baker v. Northeastern Indus. Park, Inc.*, 73 A.D.2d 753, 423 N.Y.S.2d 308 (1979), the plaintiff railroad brought a contract action against its indemnitor. The plaintiff sought reimbursement for the amount the railroad had paid to an injured employee. The plaintiff had settled the underlying action with its employee. The indemnitor had notice of the action but declined to participate. At the close of the plaintiff's evidence, the trial court directed a verdict in favor of the plaintiff. The appellate court reversed the trial court's judgment. The court stated:

> The direction of a verdict required a determination that the [underlying settlement] amount paid by plaintiff was reasonable. This was an issue on which defendant made no admission. In the absence of an admission, the reasonableness of the amount paid remained an issue of fact for the jury to determine upon all of the evidence. *Baker*, 423 N.Y.S.2d at 312.

The same is true in the present case.

■■■ IMC and Mallinckrodt had the burden of establishing that the amount paid for pre-closing patent right infringement in Mallinckrodt's settlement with DuPont was reasonable. Absent an admission from Avon, the reasonableness of the settlement had not been established as a matter of law. The basis for a judgment notwithstanding the verdict is the same as that for a directed verdict. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 354–55 (Mo.App.1993). Generally, a directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how miniscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof is never based on that party's evidence. *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993). The court erred in entering a judgment notwithstanding the verdict.

■■ In response IMC and Mallinckrodt argue that Avon did admit the reasonableness of the settlement amount when it con-

sented to the settlement. Thus, IMC and Mallinckrodt contend, Avon should be estopped from questioning the reasonableness of the settlement. However, Avon specifically questioned the reasonableness of the amount of the settlement when it gave its consent. More importantly, Avon expressly reserved the right to contest any allocation of the portions Avon, IMC, or Mallinckrodt should pay toward the settlement. Except as to liability, Avon's consent in no way constituted an admission.

## II

■■ In its second point, Avon argues that the trial court erred in its conditional grant of IMC and Mallinckrodt's motion for new trial. The trial court premised the order for a new trial on instructional error. The court concluded that it erred by giving Instruction No. 7, which purported to instruct the jury on plaintiffs' duty to mitigate damages. The court found that the evidence did not support giving an instruction on mitigation of damages. Avon offered the instruction in question. It read:

> Plaintiffs are under a legal obligation to mitigate their damages, that is, to minimize the economic loss resulting from the PYP case.

> Failure of the plaintiffs to make a reasonable effort to minimize their damages does not prevent all recovery for economic loss, but it does preclude recovery for losses which could have been avoided had a reasonable effort to lessen such losses been made.

IMC and Mallinckrodt objected to the instruction both at trial and in their motion for new trial.

■■ First of all we note the form of the instruction is a departure from the MAI concept of jury instructions. It is a mere abstract statement of law which requires no finding by the jury. The instruction fails to direct the jury to any specific evidence but leaves open to speculation and conjecture what plaintiff's could or should have done. An abstract statement of law which gives the jury no direction regarding how it should use the information is inconsistent with the MAI

**120**

concept of instructing juries to find or reject the determinative ultimate facts. *Wilson v. Consolidated Rail Corporation*, 875 S.W.2d 178, 182 (Mo.App.1994); *Holley v. Missouri Pacific Railway Corporation*, 867 S.W.2d 610, 617–18 (Mo.App.1993).[4] Furthermore, an instruction must be supported by evidence from which the jury could reasonably determine the issues submitted in the instruction. *Holtmeier v. Dayani*, 862 S.W.2d 391, 399 (Mo.App.1993). In determining the propriety of an instruction, evidence must be viewed in the light most favorable to the submission of the instruction. *Id.* A party is entitled to an instruction upon any theory supported by the evidence. *Id.* We agree with the trial court; the evidence did not support an instruction on plaintiffs' duty to mitigate damages.

Avon claims that it submitted evidence which tended to show: (1) IMC and Mallinckrodt failed to settle the PYP case at a time when the opportunity for a more favorable settlement existed, that is, before the adverse decision by the Court of Appeals for the Federal Circuit; (2) IMC and Mallinckrodt failed to disclose information which Avon requested according to the terms of the Purchase Agreement; and (3) IMC and Mallinckrodt misrepresented to Avon the extent of Mallinckrodt's potential liability to Du-Pont. These issues are addressed in the majority opinion in *Avon I* as follows:

> Avon finally accuses the plaintiffs of "failing to protect Avon's interests while controlling the defense of the patent case. . . ." It is alleged that they failed to settle the case on favorable terms and misrepresented or concealed information about the exposure. These arguments do not defeat the obligation to indemnify. They suggest at most a violation of the duty to mitigate damages, which is also an appropriate issue for trial at which dam-

ages are determined. There is no occasion to comment further about the legal and factual issues which may be presented in subsequent proceedings. It is sufficient for present purposes to say that none of the arguments presented is legally sufficient to avoid the indemnity agreement, once there has been consent to settlement. *See Avon I*, 817 S.W.2d at 910.

The phrase "mitigation of damages" is a term of art, referring to a duty to minimize the extent of damages suffered *after* the legal wrong has occurred, *Fletcher v. City of Independence*, 708 S.W.2d 158, 175 (Mo.App. 1986) or, in a contract action such as this, *after* the promisee learns that the promisor has breached the contract. *Richardson v. Collier Building Corporation*, 793 S.W.2d 366, 375 (Mo.App.1990). The bases for Avon's claim of failure to mitigate damages are actions and conduct of the plaintiffs *prior* to the breach of contract for indemnification.

Therefore, it would seem the intent of the majority opinion in *Avon I* would have been better expressed by referring to Avon's right to have its claim for a *reduction* in the amount of its indemnification obligation based upon such conduct of plaintiffs submitted to a fact finder.[5]

The quoted paragraph set forth above is the law of the case which must be followed by subordinate courts. Because the case must be retried, we observe that under the ruling of *Avon I* the issues asserted by Avon constitute nothing more or less than affirmative defenses to portions of plaintiffs' claim for indemnification. Procedurally they should be treated as such, utilizing modified affirmative defense pattern instructions. If the trial court determines the evidence warrants the submission of one or more of the defenses asserted by Avon, the jurors should be instructed that if they believe facts shown in evidence and relied upon by Avon as sup-

---

**4.** An exception to this general principle is obviously made in the case of definitions of words and phrases used in other instructions. MAI 4th edition, chapters 11–16.

**5.** Much of the confusion and disagreement between the parties regarding the import of these issues and the manner in which they might be properly submitted to the jury may be attributed to consideration of mitigation of damages as a

specific, well-defined affirmative defense. It is also illustrative of the wisdom of Judge Covington's separate opinion which dissented from the bifurcation on appeal of liability and damages and the permitting of an appeal from an interlocutory judgment on liability only. *And See Committee for Educ. Equality v. State*, 878 S.W.2d 446, 452–53 (Mo. banc 1994).

porting its claim for a reduction in its indemnification obligation, and if they find such conduct by plaintiffs caused an increase in the amount of the settlement attributable to pre-closing damages, then plaintiffs are not entitled to recover such increased amounts.

The order of the trial court granting a new trial because of instructional error is affirmed.

## III

 Most of the additional errors asserted on appeal are not likely to re-occur and need not be addressed here. However, we do deem it advisable to comment upon the disagreement between the parties regarding the issue of prejudgment interest.

Avon maintains that prejudgment interest is inappropriate under Missouri law because damages were unliquidated. The parties agree an award of prejudgment interest would be mandated by New York law. Under New York law, a successful claimant in a breach of contract action is entitled to an award of prejudgment interest computed from the earliest ascertainable date the cause of action existed, regardless of whether damages are liquidated or unliquidated. *See Love v. State*, 78 N.Y.2d 540, 577 N.Y.S.2d 359, 361, 583 N.E.2d 1296, 1298 (1991). Avon maintains that, although New York law would compel an award of prejudgment interest, this issue should be governed by Missouri law. The parties agreed the contract would be governed by the laws of New York, but Avon asserts that this is a matter of procedure which should be decided by the forum state's laws.

Missouri has adopted the Restatement (Second) of Conflict of Laws (1971) in contract actions. *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 921 (Mo.App.1991). The *Restatement* provides that the measure of damages for a breach of contract—including specifically the issue of interest—is governed by the parties' choice of law. Restatement (Second) of Conflict of Laws § 207, comment e (1971). It is not a matter of procedure but of substance.

The law of New York clearly dictates that the plaintiffs are entitled to prejudgment interest.

Accordingly, the trial courts order of judgment notwithstanding the verdict is reversed. The order sustaining Avon's motion for a new trial is affirmed and the cause is remanded for further proceedings consistent with this opinion.

GRIMM, C.J., and AHRENS, J., concur.